IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILLIAM MURPHY,

    Plaintiff,

v.                                                                Civil Action No. 3:19cv180

**FEDERAL RESERVE BANK**
**OF RICHMOND,**

    **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on three motions:

(1)    Defendant Federal Reserve Bank of Richmond's ("FRBR") Motion to Dismiss,[1] (ECF No. 7);

(2)    Plaintiff William Murphy's Motion for Extension of Time (the "Motion for Extension"), (ECF No. 13); and,

(3)    FRBR's Motion for an Order Directing Plaintiff to Cease Improper Communications (the "Motion to Cease"), (ECF No. 17).

Murphy responded to the Motion to Dismiss, (ECF No. 11), and FRBR replied, (ECF No. 12). FRBR responded to the Motion for Extension. (ECF No. 15.) Murphy did not reply to FRBR's response to the Motion for Extension and did not respond to the Motion to Cease and the time to do so has expired. These matters are ripe for disposition.

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The

---

[1] FRBR included in the Motion to Dismiss a notice consistent with the requirements set forth in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Civil Rule 7(K). The Roseboro Notice informed Murphy that he had twenty-one (21) days to respond to the motion, and that failure to respond could result in dismissal of his claims. Murphy timely responded.

Court exercises jurisdiction over Murphy's claims pursuant to 28 U.S.C. § 1331.[2] For the reasons that follow, the Court will grant the Motion to Dismiss and deny as moot the Motion for Extension and the Motion to Cease.

## I. Factual and Procedural Background

### A. Factual Background[3]

Murphy brings this employment action against his former employer, FRBR, alleging that FRBR discriminated against him on the basis of his gender and age and retaliated against him. Murphy does not specify what action precipitated the retaliation.

Murphy worked for FRBR for "[ten] plus years." (Compl. 5,[4] ECF No. 1.) For the "first three plus years [he] was a [c]ontractor and the last seven [he served] as an [e]mployee." (*Id.*) During his last five years of service, Murphy served as "a National IT Experienced Project Manager in the Project and Program Delivery Service . . . group supporting the Customer Relations Support Office." (*Id.*) Murphy avers that "[t]he princip[al] job of a Project Manager is to deliver a pre-agreed upon set of project deliverables . . . with[]in a specific time . . . and for an agreed upon cost." (*Id.*) Murphy maintains that "[w]hile supporting the [Customer Relations

---

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Murphy brings his claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621–634.

[3] For the purpose of this Rule 12(b)(6) Motion to Dismiss, the Court will accept the well-pleaded factual allegations in the Complaint as true, and draw all reasonable inferences in favor of Murphy. *Kensington Volunteer Fire Dep't v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) ("[A] court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

[4] The indicated page number of the Complaint references the page number as assigned by the Court's CM/ECF System.

Support Office], [he] was responsible for managing the infrastructure portion of projects that ranged from $100,000 to $1,500,000 dollars and lasted from [one] to [four] years." (*Id.*)

In support of his gender discrimination claim, Murphy states in full:

> The Fed showed preferential treatment in the promotion of women [naming individuals]. The Fed targeted men for disciplinary actions [naming individuals] while ignoring complaints made against wom[e]n [naming individuals]. The Plaintiff intends to solicit other current and former employees whose rights were violated to form a class action suit for gender discrimination.

(*Id.*)

In support of his age discrimination claim, Murphy provides in full:

> The Fed has targeted employees over 40 years of age with [l]ayoff's [sic], job elimination, forced retirement and disciplinary action. The organization has not communicated any information about who and why employee[s] leave the organization. The Plaintiff intends to solicit other current and former employees whose rights were violated to form a class action suit for age discrimination.

(*Id.*)

In support of his retaliation claim Murphy provides more developed factual allegations, including a timeline with specific dates. He begins by stating that "[o]n May 9, 2017," he emailed a human resources employee and an assistant vice president about a female Production Readiness Certification Coordinator who engaged in "bullying/verbally abusive behavior." (Compl. Ex. A "Retaliation Timeline" 1, ECF No. 1-1.) He avers that her "behavior had been going on for years and the Plaintiff had discussed it many times with" the assistant vice president. (*Id.*) Murphy asserts that he had not previously reported the employee's behavior "because the project needed [her] . . . [a]pproval before going into productions and without approval, it would jeopardize the project schedule." (*Id.*) Murphy states that he "requested that a different [Production Readiness Certification] Coordinator be assigned for [his] projects" but that "request was eventually denied." (*Id.*)

3

"On May 30, 2017," Murphy sent an email to the assistant vice president "explaining [that] the complexity of the projects [he] was managing had increased and it was becoming more difficult to meet all the project objectives." (*Id.*) He states that "[n]othing was done to reduce or reprioritize [his] workload." (*Id.*)

"On June 11, 2017," Murphy contends that his "project team successful[ly] completed a Go-Live deployment to production which was [five] months ahead of schedule [and] approximately $135,000 under budget. (30%)." (*Id.*)

Approximately two months later, "[i]n August 2017, there was a re[]organization." (*Id.*) As a result of this reorganization, Murphy's chain of command changed and he now reported to a new supervisor. Murphy maintains that he "made all recommendations/suggested changes made by" his new supervisor. (*Id.*) Two months later, "[o]n October 22, 2017," Murphy states that his "project team successful[ly] completed a Go-Live deployment to production that was on time and under budget." (*Id.*)

"On November 21, 2017," Murphy states that his new supervisor "verbally informed" him that Murphy "would receive a Marginal [P]erformance [R]eview for 2017." (*Id.*) Murphy avers that his "two previous year reviews" from his prior supervisor "were Effective as well as positive comments on [his] 2017 Midyear Review in May/June." (*Id.*) Murphy maintains that "[t]o th[at] point of the year [he] had delivered all project objectives on time and on or under budget." (*Id.*)

Murphy alleges that approximately two weeks later, "[o]n December 2, 2017, [his] project team successful[ly] completed Go-Lives [sic] deployment to production on time, and on budget." (*Id.*) Murphy states that "[t]his project involved one of the most important systems at the Fed." (*Id.*)

4

Murphy states that when he received his 2017 Performance Review, which rated him as Marginal, "he formally documented his disagreement with the assessment." (*Id.*; Compl. 5.) Murphy contacted the employees who supervised his supervisor and "both agreed with [his current supervisor's] assessment." (Retaliation Timeline 1.) Murphy avers that "[a]t this point [he] was going to let this go and move on." (*Id.*)

On "March 23 and 24, 2018," Murphy's "project teams successfully completed 2 Go-Lives [sic] on the same weekend that were both on time and on budget." (*Id.* 2.) Approximately one month later, Murphy "emailed [human resources] requesting a formal review [of his] 2017 [P]erformance [R]eview and [his] concerns about retaliation for going to [human resources] to complain about" the Production Readiness Certification Coordinator. (*Id.*) On that same day, Murphy's supervisor assigned him new projects in addition to his current workload.

Approximately one month later, Murphy states that he received an email from a human resources employee "on the results of her investigation." (*Id.*) He summarizes the email saying that the employee "agree[d] with the assessment of [Murphy's] [P]erformance [R]eview," "[i]t wasn't what [Murphy] accomplished, it was how [he] did it," Murphy's supervisor "needed to do extra work on [his] projects," and, "the Project Analyst assigned to [Murphy's] projects, had to do extra work to support [his] [p]rojects." (*Id.*) The next day, Murphy had a telephone call with the "National IT Senior Vice President . . . to discuss [his] complaint." (*Id.*) Later that same day, Murphy received an email from the National IT Senior Vice President, which stated that "[s]he agree[d] with the assessment of [his] [P]erformance [R]eview and no retaliation." (*Id.*)

The next month, June 2018, Murphy made several demands to a human resources employee regarding his 2017 Performance Review. The human resources employee denied these requests. In that same month, Murphy contacted the "National IT Chief Information

Officer . . . to discuss [his] complaint." (*Id.*) "Several days later . . . [he] was notified that she agreed with the others['] finding[s]." (*Id.*)

"On June 28, 2018," FRBR terminated Murphy "for poor performance." (*Id.* 3.) He states that he "was giv[en] nothing in writing and was asked to leave the building immediately." (*Id.*) Following his termination, Murphy was initially denied unemployment insurance benefits. He appealed and later received unemployment benefits.[5]

## B. Procedural Background

On November 29, 2018, Murphy filed a Charge with the United States Equal Employment Opportunity Commission ("EEOC") (the "EEOC Charge"). (Compl. 5.) On December 19, 2018, the EEOC issued Murphy a right-to-sue letter. (Compl. Ex. B "Right-to-Sue Letter" 1, ECF No. 1-2.)

Approximately three months later, on March 14, 2019, Murphy filed his *pro se* Complaint in this Court. FRBR then filed the Motion to Dismiss, Murphy responded, and FRBR replied. Following the Motion to Dismiss, Murphy filed the Motion for Extension, seeking a "[three] month extension of time." (Mot. Extension 1, ECF No. 13.) FRBR opposed the Motion for Extension. Finally, FRBR filed the Motion to Cease requesting that the Court issue "an order directing [Murphy] to cease improper communications" and "in order to reign in [Murphy's]

---

[5] In his response to the Motion to Dismiss, Murphy provides several new facts not mentioned in his Complaint or the Retaliation Timeline. But, "it is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss," *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)), so the Court will not consider any new factual allegations in deciding the Motion to Dismiss.

non-compliance with the applicable Federal Rules of Civil Procedure." (Mot. Cease 1, 5, ECF No. 17.) Murphy did not respond to the Motion to Cease.[6]

## II. Applicable Standards of Review

### A. Federal Rule of Civil Procedure 12(b)(6) Standard[7]

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356

---

[6] Because the Court will grant the Motion to Dismiss, the Court will deny as moot the Motion for Extension and the Motion to Cease.

[7] FRBR also brings its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), which allows a Court to dismiss a Complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Throughout the Motion to Dismiss, FRBR contends that the Court lacks jurisdiction to consider Murphy's claims because Murphy failed to exhaust his administrative remedies as the claims in his Complaint exceed the scope of his EEOC Charge. (*See, e.g*, Mem. Supp. Mot. Dismiss 5, ECF No. 8.) FRBR cites *Jones v. Calvert Group, Ltd.*, 551 F.3d 297 (4th Cir. 2009) in support of this contention.

However, the Supreme Court of the United States has abrogated the United States Court of Appeals for the Fourth Circuit's holding in *Jones*. In *Fort Bend County, Texas v. Davis*, issued after FRBR filed the instant Motion to Dismiss, the Supreme Court held that Title VII's requirement that a plaintiff file a charge with the EEOC prior to bringing suit constituted a mandatory requirement, but did not affect the reviewing court's jurisdiction. 139 S.Ct. 1843, 1852 (2019). Therefore, a court "must enforce the rule if a party 'properly raise[s] it,'" but a plaintiff's failure to file an EEOC Charge does not affect a reviewing court's jurisdiction. *Id.* at 1849, 1852.

The Supreme Court has previously explained that "[m]andatory claim-processing rules are less stern [than jurisdictional requirements]. If properly invoked, mandatory claim-processing rules must be enforced, but they may be waived or forfeited. [C]laim-processing rules . . . [ensure] relief to a party properly raising them, but do not compel the same result if the party forfeits them." *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17–18 (2017) (internal quotation marks and citations omitted).

Although FRBR timely raised a question of jurisdiction, the applicable law changed while the Motion to Dismiss pended before the Court. Whether Murphy exhausted the administrative remedies on his Title VII claims no longer affects this Court's jurisdiction to consider them. For this reason, the Court need not first decide whether Murphy exhausted his administrative remedies. Because Murphy clearly failed to allege facts sufficient to state his claims, the Court will assume without deciding that Murphy exhausted his administrative remedies.

7

(1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.") Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 676–79; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus., Inc.*, 637 F.3d at 440)). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

B.  **Obligation to Construe *Pro Se* Pleadings Liberally**

District courts have a duty to construe *pro se* pleadings liberally. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). A *pro se* plaintiff must nevertheless allege facts sufficient to state a cause of action. *Id.* (citation omitted). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims that the [litigant] failed to clearly raise on the face of [the] complaint." *Newkirk v. Cir. Ct. of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014).

### III. Analysis

In his Complaint, Murphy brings three counts: (1) gender discrimination; (2) age discrimination; and, (3) retaliation. The Court will address each count in turn.

A.  **The Court Will Dismiss Murphy's Gender Discrimination Claim**

Because Murphy does not allege sufficient facts to support his gender discrimination claim even viewing all well-pleaded factual allegations as true and drawing all reasonable inferences in favor of him, the Court will dismiss this claim.

1.  **Legal Standard: Title VII Claims**

Title VII states, in pertinent part, that employers cannot "discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's" race or sex. 42 U.S.C. § 2000e-2(a)(1). When no direct evidence of discriminatory intent exists, the plaintiff must proceed under the *McDonnell Douglas* "burden-shifting" framework.[8] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this standard, the plaintiff carries the initial burden of establishing a *prima facie*

---

[8] Even viewing all well-pleaded factual allegations favorably, Murphy proffers no direct evidence of discrimination. Therefore, Murphy must proceed under the *McDonnell Douglas* burden shifting framework.

9

case of discrimination. *See id.* at 802. After the plaintiff establishes this prima facie case of discrimination, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.*

At the Motion to Dismiss stage, a Title VII plaintiff claiming gender discrimination must plead sufficient facts to show that: "(1) [he or] she is a member of a protected class; (2) [he or] she suffered an adverse employment action; (3) [he or] she was performing [his or] her job duties at a level that met [his or] her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 312 (D. Md. 2015) (citations omitted). "Although a Title VII plaintiff need not plead facts that constitute a prima facie case, a plaintiff still bears the burden of alleging facts sufficient to state all the elements of her claim." *Turner v. Richmond Pub. Schs.*, No. 3:16cv256, 2017 WL 1179162, at *12 (E.D. Va. Mar. 28, 2017) (internal quotation marks and citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017) (stating that a plaintiff seeking to raise an employment discrimination claim "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss, but . . . the more stringent pleading standard established in *Iqbal* and *Twombly* applies.").

### 2. Murphy Fails to Allege Facts Sufficient to State a Gender Discrimination Claim

In support of his gender discrimination claim, Murphy states only that FRBR "showed preferential treatment in the promotion of women" and "targeted men for disciplinary actions . . . while ignoring complaints made against wom[e]n." (Compl. 5.) Although he specifically names individuals—presumably other FRBR employees—Murphy fails to allege additional facts to support his conclusory allegations. As a result, this claim fails.

10

Although Murphy need not plead a prima facie case of employment discrimination, he must plead facts to meet each element of his claim. *See Woods*, 855 F.3d at 648; *Turner*, 2017 WL 1179162, at *12. Here, Murphy states only that FRBR "showed preferential treatment in the promotion of women." (Compl. 5.) Murphy does not allege that he—or any other male employee—applied for and did not receive a promotion. Murphy also contends that FRBR "targeted men for disciplinary action." (*Id.*) Similarly, he provides no support for this contention. Murphy's use of this talismanic language without further factual support fails to shift his claims from mere possibility to plausibility as required by the federal pleading standards. *See Iqbal*, 556 U.S. at 676–79; *Twombly*, 550 U.S. at 556. Further, Murphy's identification of other individuals without further factual support (even as to place of employment or position held), cannot suffice to state a claim even under the liberal standard of review afforded to *pro se* plaintiffs. *See Newkirk*, 2014 WL 4072212, at *1 (stating that the Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims that the [litigant] failed to clearly raise on the face of [the] complaint.")

Even assuming that Murphy exhausted his administrative remedies as to his gender discrimination claim, Murphy fails to provide sufficient facts to support his gender discrimination claim. Because does not properly support this claim, the Court will grant the Motion to Dismiss as to the gender discrimination claim.

### B. The Court Will Dismiss Murphy's Age Discrimination Claim

Similar to his gender discrimination claim, Murphy fails to provide sufficient factual support for his age discrimination claim under the Age Discrimination in Employment Act (the "ADEA") to survive the instant Motion to Dismiss.

1. **Legal Standard: Age Discrimination in Employment Act**

The ADEA provides:

It shall be unlawful for an employer--
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
(3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623(a).

To succeed on a claim under the ADEA, a plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). Similar to Title VII, a plaintiff can show cause either through direct evidence of intentional discrimination or through the indirect, burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, and its progeny.[9] Under the *McDonnell Douglas* burden shifting scheme, once the plaintiff makes a prima facie case of age discrimination, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc), abrogated in part by *Gross*, 557 U.S. 167.

At the Motion to Dismiss stage, a plaintiff must show: (1) he or she is a member of the protected class, namely "individuals who are at least 40 years of age," 29 U.S.C. § 631(a); (2) he or she applied for and was qualified for the position; (3) he or she was rejected despite his or her qualifications; and, (4) the position remained open or was filled by a substantially younger

---

[9] Even viewing all well-pleaded factual allegations favorably and drawing all reasonable inferences in favor of Murphy, no direct evidence of discrimination exists. Therefore, Murphy must proceed under the *McDonnell Douglas* burden shifting framework.

person. *See Arthur v. Pet Diary*, 593 F. App'x 211, 216–17 (4th Cir. 2015); *Hill*, 354 F.3d at 285.

### 2. Murphy Fails to Allege Facts Sufficient to State an Age Discrimination Claim

Similar to his gender discrimination claim, Murphy provides scant factual allegations in support of his age discrimination claim. He states only that FRBR "targeted employees over 40 years of age with [l]ayoff's [sic], job elimination, forced retirement and disciplinary action. The organization has not communicated any information about who and why employee[s] leave the organization." (Compl. 5.) These allegations alone cannot sufficiently state a claim even under the liberal standard afforded to Murphy as a *pro se* plaintiff. Accordingly, Murphy fails to state a claim for age discrimination.

At approximately fifty-nine years old, Murphy falls within the class of people protected by the ADEA. 29 U.S.C. § 631(a). However, Murphy provides no factual allegations to satisfy the other elements of the adapted *McDonnell Douglas* test. Murphy does not even allege that his age represents the reason FRBR terminated him. He provides no allegations from which the Court may find that his "age was the 'but-for' cause of" his termination. *Gross*, 557 U.S. at 180. Even if Murphy exhausted his administrative remedies on his age discrimination claim, based on the allegations in the Complaint, Murphy's claim constitutes only a mere legal conclusion without further factual enhancement. As pled his claim must fail. *See Iqbal*, 556 U.S. at 676–79; *Twombly*, 550 U.S. at 556. Therefore, the Court will grant the Motion to Dismiss as to the age discrimination claim.

## C. The Court Will Dismiss Murphy's Retaliation Claim Under Both Title VII and the ADEA

Finally, Murphy brings a retaliation claim. Although Murphy does not specify whether he brings this claim under Title VII or the ADEA, his claim as alleged fails under either statute.

### 1. Legal Standard: Retaliation Claims

Both Title VII and the ADEA prohibit employers from retaliating against employees who oppose discrimination. 29 U.S.C. § 623(d); 42 U.S.C. § 2000e-3(a). Under both Title VII and the ADEA a court considers a retaliation claim using the now familiar *McDonnell Douglas* standard. *See Young*, 108 F. Supp. 3d at 312 ("In the Fourth Circuit, the burden-shifting framework established in *McDonnell Douglas* . . . applies to Title VII claims, including . . . retaliation claims." (citations omitted)); *Simard v. Unify, Inc.*, 688 Fed. App'x 228, 228 (4th Cir. 2017) (per curiam) (stating that "[a]bsent direct evidence of retaliation, a plaintiff asserting an ADEA claim must establish a prima facie case of retaliation under the burden-shifting famework adopted by the Supreme Court in *McDonnell Douglas*." (citations omitted)).

At the Motion to Dismiss stage, to succeed on a retaliation claim "a plaintiff must show that: (1) he [or she] engaged in protected conduct; (2) an adverse action was taken against him [or her] by the employer; and (3) there was a causal connection between the first two elements." *Ullrich v. CEXEC, Inc.*, 709 Fed. App'x 750, 753 (4th Cir. 2017) (per curiam) (citations omitted); *see Young*, 108 F. Supp. 3d at 314 (identifying the same elements to state a retaliation claim under Title VII). "[I]n the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). Murphy's case potentially raises only opposition. "[P]rotected oppositional activities may include staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities . . . as well as

complaint[s] ... about suspected violations." *Id.* (internal quotation marks and citations omitted). "No particular magic words are required, all that is necessary is that 'the employee at least have actually opposed employment practices made unlawful *by Title VII*,'[10] rather than raised generalized workplace grievances." *Young,* 108 F. Supp. 3d at 317 (citations omitted) (emphasis in original). "[G]eneral concerns about ... workload, hours, and denial of leave" do not rise to the level of a protected activity. *Sajadian v. Am. Red Cross,* 202 F.3d 260, at *1 (4th Cir. 1999) (table decision).

### 2. Murphy Fails to Allege Sufficient Facts to State A Retaliation Claim

Here, although Murphy provides a detailed timeline of his last year of employment with FRBR, he does not show that he has engaged in any protected activity to satisfy the first element of the retaliation test. Murphy does not specify what he considers to be the protected activity that gave rise to his retaliation claim. Even so, none of his allegations rise to such a level. Because he cannot meet the first element of the retaliation test, the Court must dismiss Murphy's retaliation claim.

First, Murphy alleges that he complained about the Production Readiness Certification Coordinator assigned to his projects for "bullying/verbally abusive behavior." (Retaliation Timeline 1.) He states that this conduct "had been going on for years," but that he did not report it previously "because the project needed [Production Readiness Certification] [a]pproval before going into productions and without approval, it would jeopardize the project schedule." (*Id.*) Even under the liberal standard of review afforded to Murphy as a *pro se* plaintiff, the Court cannot find that these allegations plausibly state the Production Readiness Certification

---

[10] The standard applies "not only to employment actions actually unlawful under Title VII but also employment actions an employee reasonably believes to be unlawful." *Navy Fed. Credit Union,* 424 F.3d at 406 (citations omitted).

Coordinator's actions may have *violated Title VII or the ADEA*, such that Murphy's opposition to them constituted a protected activity. Without further factual enhancement, this email stands as a "generalized workplace grievance." *See Young*, 108 F. Supp. 3d at 317 (citations omitted). Such grievances cannot serve as the protected activity to support Murphy's retaliation claim.

Second, Murphy states that he spoke with his supervisor "explaining [that] the complexity of the projects [he] was managing had increased and it was becoming more difficult to meet all the project objectives." (Retaliation Timeline 1.) He avers that "[n]othing was done to reduce or reprioritize [his] workload." (*Id.*) The Fourth Circuit has explicitly stated that "general concerns about . . . workload" do not rise to the level of a protected activity. *Sajadian*, 202 F.3d 260, at *1. Therefore, this conversation similarly does not amount to protected activity required to support Murphy's retaliation claim.

Third, Murphy explains that he "documented his disagreement with [his 2017] assessment." (Retaliation Timeline 1.) Throughout his "timeline," Murphy maintains that he made several complaints about his 2017 Performance Review, but each person who reviewed it agreed with his supervisor's opinion as expressed in the review. (*See generally* Retaliation Timeline.) Although Murphy believed that he deserved a better review and explained that he completed several projects under budget and on time throughout his last year at FRBR, he does not plausibly allege how this Performance Review violated either Title VII or the ADEA, even viewing his well-pleaded factual allegations favorably. To state a retaliation claim, Murphy must have engaged in a protected activity, which required him to "oppose[] employment practices made unlawful *by Title VII*,' rather than [raising] generalized workplace grievances." *Young*, 108 F. Supp. 3d at 317 (citations omitted). Because Murphy has failed to show how his

2017 Performance Review constituted conduct that violated either Title VII or the ADEA, his complaint cannot undergird his retaliation claim because it does not amount to protected activity.

Finally, Murphy states that he was initially denied unemployment benefits and did not receive them until he appealed that decision. Because Murphy does not plausibly allege that he engaged in a protected activity, even if this constituted an adverse employment action, Murphy could not support his retaliation claim with these allegations. *See Ullrich*, 709 Fed. App'x at 753 (specifying the requirements of an ADEA retaliation claim); *Young*, 108 F. Supp. 3d at 314 (specifying the requirements of a Title VII retaliation claim).

Because Murphy has not identified a protected activity in which he engaged that could support his retaliation claim, Murphy's retaliation claim must fail under both the ADEA and Title VII. For this reason, the Court will grant the Motion to Dismiss as to the retaliation claim.

### IV. Conclusion

For the foregoing reasons, the Court will grant the Motion to Dismiss and will dismiss without prejudice Murphy's Complaint. The Court will also deny as moot the Motion for Extension and the Motion to Cease. If Murphy wishes to do so, he must file an Amended Complaint, no later than February 14, 2020.

An appropriate order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 1/22/2020
Richmond, Virginia